**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 13-cv-0064-WJM-MJW

HEATHER FREEMAN,

     Plaintiff,

v.

ARAPAHOE HOUSE, a non-profit corporation,

     Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Heather Freeman ("Plaintiff") has brought this civil action under 42 U.S.C. § 1983 against Defendant Arapahoe House ("Defendant"), alleging negligence claims and violations of her Fourteenth Amendment right to substantive due process. (Second Am. Compl. (ECF No. 38).)  This matter is before the Court on Defendant's Motion for Summary Judgment ("Motion").  (ECF No. 75.)  For the reasons set forth below, Defendant's Motion is granted.

## I.  BACKGROUND

The relevant facts, viewed in the light most favorable to the Plaintiff, are as follows.  Defendant is a detoxification facility that has a contract with the City of Aurora, Colorado, under which Defendant receives funding so that the City can utilize Defendant's facilities for intoxicated persons.  (Dean Dep. (ECF No. 86-3) pp. 12, 48-49, 95.)  Approximately half of Defendant's clients are brought in by the police, frequently in handcuffs.  (*Id.* at 55, 94.)  Defendant assesses those individuals and

determines whether it will accept them as clients. (*Id.* at 49.) Police officers are in and out of the facility on a regular basis. (*Id.* at 42.)

On January 29, 2011, in the early morning hours, Plaintiff was at her mother's house in Aurora, Colorado and had been drinking alcohol when she and her brother got into an argument. (Movant's Statement of Material Facts ("MSMF") (ECF No. 75) ¶¶ 1, 3.)[1] Plaintiff's mother awoke and called the police. (*Id.* ¶ 2.) Plaintiff departed her mother's house before the police arrived, but was approached by police officers as she stood on a nearby street corner. (*Id.* ¶¶ 4-5.) The officers gave Plaintiff a breathalyzer test, determined that Plaintiff was intoxicated, and gave her the choice of being arrested or going to a detox facility. (Freeman Dep. (ECF No. 86-2) pp. 13-14.) Plaintiff chose detox, and was taken to Defendant's facility. (*Id.* at 14.)

After Plaintiff was checked into the facility and used the telephone, a male client of the facility named Christian Suarez told her that he could show her a place to get water and hang out. (MSMF ¶ 12.) Suarez brought Plaintiff to an empty room in the facility where he sexually assaulted her. (*Id.* ¶¶ 13-17.) Plaintiff shouted for help and ran to the check-in area to report the assault. (*Id.* ¶¶ 17-18.) A police officer and one of Defendant's staff members were present when Plaintiff reported the assault. (*Id.* ¶ 20; Dean Dep. p. 43.) None of Defendant's staff was present to witness the assault, and Defendant has no surveillance cameras inside the facility. (Dean Dep. pp. 44-45.)

When a female police officer arrived and interviewed Plaintiff about the assault, Plaintiff became upset and agitated, and was placed under arrest. (MSMF ¶¶ 23-24.)

---

[1] The Court cites to Defendant's statement of undisputed facts only where Plaintiff admits the facts cited. (*See* ECF No. 86 at 2-4.)

Suarez was arrested and subsequently pled guilty to the assault.  (*Id.* ¶¶ 25-26.)  The charges against Plaintiff were later dismissed.  (*Id.* ¶ 27.)

On March 12, 2013, Plaintiff filed the operative Second Amended Complaint in this action, claiming that Defendant and the City of Aurora were liable pursuant to 42 U.S.C. § 1983 for violating her Fourteenth Amendment rights, that three Aurora police officers arrested her without probable cause in violation of the Fourth Amendment, and that Defendant was liable for negligence and negligent supervision in permitting the assault to occur.  (ECF No. 38.)  Plaintiff subsequently dismissed her claims against the City of Aurora and the three police officers.  (ECF Nos. 77 & 79.)

Defendant filed the instant Motion on December 4, 2013.  (ECF No. 75.)  Plaintiff filed her Response on January 10, 2014 (ECF No. 86), and Defendant filed its Reply on February 3, 2014 (ECF No. 93).

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

The Court must resolve factual ambiguities against the moving party, thus favoring the

right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III.  ANALYSIS

Defendant moves for summary judgment as to all remaining claims against it.

(ECF No. 75 at 7-10.)  The Court will discuss each in turn below.

### A.      Section 1983 Claim

A claim under § 1983 "requires a plaintiff to show both the existence of a

federally-protected right and the deprivation of that right by a person acting under color

of state law."  *Wittner v. Banner Health*, 720 F.3d 770, 773 (10th Cir. 2013) (citing *Lugar*

*v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982)).  Defendant's Motion challenges the

second of these requirements, arguing that Plaintiff has failed to show that it acted

under color of law.  (ECF No. 75 at 7.)

The "under color of law" requirement in § 1983 cases is identical to the state

action requirement of the Fourteenth Amendment.  *Lugar*, 457 U.S. at 928.  For a

deprivation of a right to be committed under color of law, it "must be caused by the

exercise of some right or privilege created by the State or by a rule of conduct imposed

by the state or by a person for whom the State is responsible," and "the party charged

with the deprivation must be a person who may fairly be said to be a state actor."  *Id.* at

937.  The Tenth Circuit has established four tests under which a private actor may be

4

held accountable as a state actor for a constitutional deprivation: (1) the "nexus test," (2) the "public function test," (3) the "joint action test," and (4) the "symbiotic relationship test." *Wittner*, 720 F.3d at 775.  The Court will discuss each of these tests in turn.

     1.    <u>Nexus Test</u>

The nexus test evaluates whether the state has coerced or compelled a private actor to perform the challenged action. *Id.*; *see also Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1448 (10th Cir. 1995) ("[A] plaintiff must demonstrate that there is a sufficiently close nexus between the government and the challenged conduct such that the conduct may be fairly treated as that of the State itself.") (internal quotation marks omitted).

In *Pino v. Higgs*, 75 F.3d 1461 (10th Cir. 1996), the Tenth Circuit reviewed a § 1983 claim against a doctor at a private hospital, whose psychiatric evaluation resulted in the plaintiff's involuntary detention pursuant to state statute. *Id.* at 1466. The Tenth Circuit concluded that the doctor did not act under color of law pursuant to the nexus test because his decision was not coerced or compelled by the state. *Id.* The Tenth Circuit came to the same conclusion in *Wittner v. Banner Health*, a similar case involving an involuntary hold, despite the hospital's receipt of state funding and the fact that state police officers had detained the plaintiff and had taken him to the hospital. *Wittner*, 720 F.3d at 776.

Here, Defendant argues that its contract with the City of Aurora does not sufficiently establish state coercion, because Defendant makes its own policies with respect to admission to its facility and treatment of its clients. (ECF No. 75 at 8.)  In her

Response, Plaintiff makes a blanket statement that "there is support for a finding of state action under each of the four tests," but does not otherwise argue that Defendant is a state actor under the nexus test or point to any specific evidence or case law supporting such a finding.  (ECF No. 86 at 10.)

Defendant's challenged conduct here has far fewer indicia of state compulsion than those present in *Pino* and *Wittner*, both of which failed the nexus test in spite of the fact that the challenged conduct was authorized by state statutes.  While there is a dispute of fact as to how analogous Defendant's facility is to a detention facility with respect to the role of police officers and the ability of clients to leave at will (*see* ECF No. 86 at 5-7), there are no facts which would support a conclusion that the challenged staffing, supervision, and client monitoring policies are determined by the state, or by anyone other than Defendant.  (*See, e.g.*, Dean Dep. p. 26 (noting that no state "licensure or standard" requires a policy of completely segregating male and female clients, and Defendant has no such policy).)  Accordingly, given the lack of evidence supporting a finding that Defendant's challenged practices and policies with respect to staffing and supervision are compelled by the state, the Court finds that no reasonable jury could conclude that Defendant is a state actor under the nexus test.

    2.   Public Function Test

The public function test inquires whether the challenged action "is a traditional and exclusive function of the state."  *Wittner*, 720 F.3d at 777.  "This test is difficult to satisfy.  While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State."  *Gallagher*, 49 F.3d at 1456 (internal quotation marks omitted).  Traditional and exclusive functions of the state include such

functions as administering public elections, operating towns, or managing city parks, but not educating children or enforcing statutory liens.  *See id.*

Defendant argues that there is no support for a finding that operating detoxification facilities is a traditional and exclusive function of the state.  (ECF No. 75 at 8.)  At least one district court has found that operating a drug detoxification facility is not an exclusive state function.  *See Graves v. Narcotics Serv. Counsel, Inc.*, 605 F. Supp. 1285, 1287 (E.D. Mo. 1985).  As with the nexus test, Plaintiff does not address the public function test in her Response, other than the previously-referenced general statement that she believes there is evidence supporting all four tests.  (*See* ECF No. 86 at 10.)  Plaintiff has not cited any authority supporting a finding that operating a detoxification facility is a traditional and exclusive function of the state, and the Court has found none.  Rather, the undisputed evidence here suggests that the majority of such facilities are private organizations under contract to provide detoxification services for the state.  (*See* Dean Dep. pp. 97-98.)

Therefore, the Court finds that no reasonable jury could conclude that Defendant is a state actor pursuant to the public function test.

3.    Joint Action Test

The joint action test inquires whether the state and the private party have "acted in concert in effecting a particular deprivation of constitutional rights."  *Gallagher*, 49 F.3d at 1453.  To constitute state action, the joint action must involve the state in an active role; private action taken "'with the mere approval or acquiescence of the State is not state action.'"  *Wittner*, 720 F.3d at 777 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*,

526 U.S. 40, 52 (1999)).

Defendant argues that there is no evidence that the City of Aurora did anything more than acquiesce to Defendant's policies and procedures, which is insufficient to establish that Defendant was a state actor under the joint action test.  (ECF No. 75 at 9.)  Plaintiff contends that the role of police officers at Defendant's facility—first in taking Plaintiff there in handcuffs against her will, and later in arresting her, allegedly at Defendant's instruction—show that the state actively participated in the challenged conduct.  (ECF No. 86 at 12.)  However, Plaintiff's constitutional claim is not related to these acts.  Rather, Plaintiff alleges that Defendant's customs, practices, and policies of allowing male and female patients to commingle, failing to train or supervise personnel, and failing to maintain a video surveillance system were the actions that deprived Plaintiff of her substantive due process rights.  (*See* Second Am. Compl. ¶¶ 32-42.)  Thus, Plaintiff has not identified any joint actions in which the state acted in concert with Defendant to deprive Plaintiff of her constitutional rights.  *See Gallagher*, 49 F.3d at 1453.

Plaintiff cites numerous authorities in support of her joint action argument, but the Court finds none of them to be relevant to the instant case.  (*See* ECF No. 86 at 12-13.)  The majority of the cases Plaintiff cites deal with the qualified immunity analysis in circumstances where the defendant had already conceded that it was a state actor under § 1983, including the Ninth Circuit case involving a detoxification facility on which Plaintiff seeks to rely.  (*Id.* (citing *Halvorsen v. Baird*, 146 F.3d 680, 685 (9th Cir. 1998) (noting defendant's position that it was "performing a quasi-governmental function pursuant to Oregon statute", and citing statutes providing that the police take a publicly

8

intoxicated person to a treatment facility and establishing standards for approving public and private treatment facilities).)  Plaintiff does not explain how the qualified immunity analysis conducted in these cases informs in any meaningful manner the inquiry into whether a defendant is a state actor under § 1983.  Indeed, only two of the cases cited by Plaintiff included any type of analysis of state action, one of them under the nexus test and the other apparently under the public function test.  *See Jensen v. Lane Cnty.*, 222 F.3d 570, 572-73 (9th Cir. 2000) (consultation between private doctor and county psychiatric hospital for involuntary hold established "sufficiently close nexus" to constitute state action); *West v. Atkins*, 487 U.S. 42, 54-55 (1988) (private physician was state actor where he was employed by prison to fulfill state's constitutional obligation to provide adequate medical care to prisoners); *see also Wittner*, 720 F.3d at 779 (noting that "*West* is at its core a public function case").  Thus, neither *West* nor *Jensen* is persuasive authority in regards to the joint action test.

As there is no evidence supporting a finding that Defendant acted in concert with the state in depriving Plaintiff of her constitutional rights, the Court finds that no reasonable jury could conclude that Defendant was a state actor under the joint action test.

      4.   <u>Symbiotic Relationship Test</u>

The symbiotic relationship test asks whether the state has "so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity."  *Gallagher*, 49 F.3d at 1451 (internal quotation marks omitted).  This analysis "starts by asking whether and to what extent

the state's relationship with the private actor goes beyond the 'mere private purchase of contract services.'" *Wittner*, 720 F.3d at 778 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assn.*, 531 U.S. 288, 299 (2001)) (brackets omitted); *see also Gallagher*, 49 F.3d at 1453 ("Payments under government contracts and the receipt of government grants and tax benefits are insufficient to establish a symbiotic relationship between the government and a private entity."). "[A] public-private relationship can transcend that of mere client and contractor if the private and public actors have sufficiently commingled their responsibilities." *Wittner*, 720 F.3d at 778.

In *Milonas v. Williams*, 691 F.2d 931 (10th Cir. 1982), the Tenth Circuit found a symbiotic relationship between the state and a private school for behaviorally challenged boys. 691 F.2d at 940. The school in *Milonas* had students placed there for entire school terms by courts, state agencies, and public school districts; received significant state funding to mitigate tuition, which it touted to prospective students; and its educational program was extensively regulated by the state. *Id.* In *Wittner v. Banner Health*, the Tenth Circuit contrasted the defendant hospital's state contract to provide involuntary psychiatric holds with the school arrangement in *Milonas*, and found no symbiotic relationship. 720 F.3d at 778-79. The hospital in *Wittner* had a contract authorizing acceptance of patients for involuntary holds of only 72 hours; allowed the hospital to accept or reject patients in its discretion; did not involve extensive state participation in patient care; and did not involve the state's dictation of the medical program. *Id.*

10

Defendant contends that the evidence here supports a finding of mere client and contractor, not commingled responsibilities.  (ECF No. 75 at 9-10.)  Plaintiff argues that there is a dispute of fact as to the extent of the police officers' role at Defendant's facility, and the police officers had a greater participatory role than Defendant admits.  (ECF No. 86 at 10-11.)  It is undisputed that Defendant receives half of its clients as referrals from law enforcement, and that police officers are frequently present at Defendant's facility during client intake.  (Dean Dep. pp. 42, 55, 94.)  Plaintiff also presents evidence that her presence at Defendant's facility was not voluntary, and that she would have been detained involuntarily by Defendant's staff until she was no longer intoxicated.  (Freeman Dep. pp. 19, 30.)

Nevertheless, the evidence demonstrates a limited level of interdependence here that is more like *Wittner* than like *Milonas*.  The regular presence and use of police officers at Defendant's facility goes beyond the mere existence of a contract, and the state is heavily involved in referring clients to Defendant.  However, Defendant may reject those clients in its discretion, and the state does not extensively regulate or dictate the program Defendant provides.  (*See* Dean Dep. pp. 49, 94.)  Thus, even the greater police presence that Plaintiff alleges is insufficient to demonstrate the interdependence required to attribute Defendant's challenged conduct to the state under the symbiotic relationship test.  *See Wittner*, 720 F.3d at 779.

Plaintiff argues that her very presence at Defendant's facility resulted from the police officers' actions in referring her there, and states that "[t]he conduct alleged here is 'fairly attributable to the State', for it was undertaken by reason of contracts with the state."  (ECF No. 86 at 11 n.5 (citing *Gallagher*, 49 F.3d at 1447).)  However, it is well

11

established that government contracts and grants do not establish a symbiotic relationship.  *Gallagher*, 49 F.3d at 1453.  Notably, Plaintiff has cited no evidence that the state is involved at all, whether by contractual dictate or otherwise, in establishing or enforcing the policies she challenges in her Second Amended Complaint.  Accordingly, the Court finds that no reasonable jury could find that Defendant was a state actor under the symbiotic relationship test.

As the Court has found Defendant to be a private actor under all four tests for state action, it concludes that Plaintiff has failed to show a genuine dispute of material fact as to whether Defendant was acting under color of law when it committed the challenged conduct.  Accordingly, summary judgment is appropriate in Defendant's favor as to Plaintiff's § 1983 claims.

**B.    Remaining Claims**

Jurisdiction in this action is based on Plaintiff's allegation of violations of federal law.  (Second Am. Compl. ¶ 4.)  Because the Court had original jurisdiction over Plaintiff's § 1983 claims, it also had supplemental jurisdiction over Plaintiff's state law negligence claims.  *See* 28 U.S.C. § 1367.  However, as the Court has now granted summary judgment on Plaintiff's sole remaining § 1983 claim, the only basis for jurisdiction is supplemental jurisdiction.

Federal supplemental subject matter jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right."  *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  If federal claims are

dismissed before trial, leaving only issues of state law, the federal district court should ordinarily decline to exercise supplemental jurisdiction. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  The Court sees no reason to vary from the ordinary course in this case. Accordingly, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims, and will not consider Defendant's arguments with respect to the merits of Plaintiff's negligence claims.

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.  Defendant's Motion for Summary Judgment (ECF No. 75) is GRANTED as to Plaintiff's federal claims;

2.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state claims, and those claims are DISMISSED WITHOUT PREJUDICE; and

3.  The Clerk shall enter judgment in favor of Defendant and against Plaintiff. Defendant shall have its costs.

Dated this 6th day of August, 2014.

BY THE COURT:

William J. Martinez
United States District Judge